FILED
SUPERIOR COURT
OF GUAM

2021 MAY 27 AM 7:05

CLERK OF COURT
BY:_____ X

## IN THE SUPERIOR COURT OF GUAM

LAYLA STORY-BERNARDO, DANIEL
BERNARDO, TOMMY ARCEO, BETTY DIAZ,
FAYE DORA CRUZ SANCHEZ, NONITO
SANCHEZ, JOHN PINUALA, RENE BALBIN,
DANIEL ANCIANO, RAYCIA MARIE SAN
NICOLAS CHARFAUROS, ROEL RAMA,

Plaintiffs,

vs.

GOVERNMENT OF GUAM, LOURDES
LEON GUERERRO, in her official capacity as the
GOVERNOR OF GUAM and in her personal
capacity, EDWARD BIRN, in his official capacity
as Director of the Department of Administration,
LILIAN POSADAS in her official and personal
capacity as Administrator of the Guam Memorial
Hospital, VINCENT P. ARRIOLA, in his official
and personal capacity as Director of the Department
of Public Works, JON J. P. FERNANDEZ in his
official and personal capacity as Superintendent of
the Guam Department of Education, JOE
CARBULLIDO in his official and personal capacity
as Director of the Department of Corrections,
LARRY J. GAST in his official and personal
Capacity as Manager of the Guam Solid Waste

CIVIL CASE NO.: CV0733-20

**DECISION AND ORDER**
**Re: Defendants' Motion to Dismiss**

CV0733-20, Layla Story-Bernardo, et al v. Government of Guam, et al.
Decision and Order (Motion to Dismiss).

Page 1 of 25

Authority, DANIEL C. STONE in his official and personal capacity as Chief of the Guam Fire Department, KRISTINA L. BAIRD in her official and personal capacity as Administrator of the Judiciary of Guam, STEPHEN IGNACIO in his official and personal capacity as Chief of Police, THERESA C. ARRIOLA in her official and personal capacity as the Director of the Guam Behavioral Health and Wellness Center, and IKE PEREDO in his official and personal capacity as the Director of the Guam Customs and Quarantine Agency,

Defendants.

## INTRODUCTION

This matter came before the Honorable Judge Teresa Kim-Tenorio on December 17, 2020, upon Defendant Kristina L. Baird's Motion to Dismiss Pursuant to Guam Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Plaintiffs, Layla Story-Bernardo, *et al.*, ("Plaintiffs") are represented by the law firm of Razzano, Walsh, & Torres, P.C. The Defendant, Kristina L. Baird ("Baird"), is represented by Alicia A.G. Limtiaco, Esq., Andrew S. Quenga, Esq., and Daniel Mensching, Esq. Defendants, the Government of Guam, *et al.* ("Government of Guam"), are represented by Assistant Attorney General Jordan Lawrence Pauluhn. Oral arguments were heard before this Court on April 28, 2021. For the reasons set forth below, having reviewed the moving papers and oral arguments of both parties, the Court **GRANTS** Defendant's Motion to Dismiss without prejudice and with leave to amend.

## BACKGROUND

On March 14, 2020, the Governor of Guam, Lourdes A. Leon Guerrero, declared a state of emergency in response to the threat caused by the novel coronavirus pandemic. *See* Exec. Order No. 2020-03, Island of Guam (Mar. 14, 2020). Two days later, on March 16, 2020, the Governor issued an Executive Order closing non-essential government offices. *See* Exec. Order No. 2020-04, Island of Guam (Mar. 16, 2020). Additionally, the United States Congress passed a comprehensive aid package to help combat COVID-19 and assist

state, territorial, tribal and local governments to battle its economic impact. *See* Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *See* Pub. L. 116-136 (Mar. 27, 2020). Congress created the Coronavirus Relief Fund and directly appropriated funds from the Treasury of the United States to state, territorial, tribal, and local governments. *See* CARES Act § 5001 (*amending* 42 U.S.C. § 601).

The Governor accepted the aid flowing from the CARES Act and used those funds to provide COVID-19 testing, purchase personal protective equipment for frontline workers, and procure temporary medical facilities. *See* Def.'s Mot. to Dismiss (Dec. 29, 2020). The Governor also authorized differential pay up to twenty five percent (25%) for essential employees with variances based on their exposure level to COVID-19. *See* Exec. Order 2020-08 (Apr. 5, 2020).

On March 16, 2020, the Supreme Court of Guam ("Supreme Court") issued two Administrative Orders which closed all Judiciary facilities to five categories of persons. *See* ADM20-210 (Mar. 16, 2020); *See also* ADM20-206 (Mar. 16, 2020). The Supreme Court also suspended jury trials. *See* ADM20-207 (Mar. 16, 2020). However, the courts continued scheduling and hearing certain matters, either in-person or remotely, depending on their urgency. *See* ADM20-210 (Mar. 16, 2020). Since March 16, 2020, the Supreme Court has issued several Administrative Orders in response to the fluctuating pandemic conditions of the island. These orders resumed Judiciary operations while complying with the various directives of the Department of Public Health and Social Services.[1]

On October 6, 2020, Plaintiffs filed a Class Action Complaint seeking an "order commanding the Defendants to cease their due process violations, and pay overtime and double pay as mandated by law and cease requiring employees to work overtime if overtime cannot be paid according to Guam Law." Class Action Compl. at 30 (Oct. 6, 2020). Plaintiffs further seek "[j]udgment in favor of Plaintiffs and the class in the amount no less than one hundred million dollars ($100,000,000.00) for all double pay and overtime due to Plaintiffs and the class." *Id.* at 31. They also seek to obtain "a judgment in an amount equal to expenditures over $600,000.00 (six hundred thousand dollars) from the CARES Act Fund

---

[1] *See* ADM20-239 (May 4, 2020); ADM20-254 (May 29, 2020); ADM20-361 (July 2, 2020); ADM20-392 (Aug. 14, 2020); ADM20-403 (Aug. 28, 2020); ADM20-406 (Sep. 4, 2020); and ADM20-411 (Sep. 25, 2020).

against Defendants Governor of Guam and Birn, in their personal capacities, for expending CARES Act funds without appropriation and proper authority." *Id.*

On December 17, 2020, Defendant Kristina L. Baird, in her official and personal capacity of Administrator of the Courts, filed a motion to dismiss Counts III through VIII. *See* Mem. in Support of Def.'s Mot. to Dismiss (Dec. 17, 2020). The Office of the Attorney General filed a Memorandum in Support of Motion to Dismiss on December 29, 2020. *See* Mem. in Support of Mot. to Dismiss (Dec. 29, 2020). Plaintiffs filed their oppositions to the Motion to Dismiss on January 14, 2021, and January 25, 2021, respectively. Defendant Baird filed a reply brief on January 28, 2021. Finally, after the Court granted a stipulation extending time to reply, the Office of the Attorney General filed their reply brief on March 5, 2021. The Court heard oral arguments on April 28, 2021, and subsequently took this matter under advisement.

## DISCUSSION

Standing is a component of subject matter jurisdiction. *See Taitano v. Lujan*, 2005 Guam 26 ¶ 15 (citing *Guam Imaging Consultants, Inc. v. Guam Memorial Hospital Auth.,* 2004 Guam 15 ¶ 17). Thus, "[i]f a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Id.* A dismissal pursuant to Rule 12(b)(6) addresses only a plaintiff's failure to properly frame and raise claims, whereas Rule 12(b)(1) specifically addresses the issue of lack of subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510-13 (2006). The United States Supreme Court has lamented that courts have routinely failed to distinguish between the two, stating, "[o]n the subject matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this court and others have been less than meticulous." *Id.* at 511. The court further characterized dispositions which fail to consider the difference as "unrefined" and "drive-by jurisdictional rulings." *Id.* (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91 (1998).

Both forms of dismissals are requested by the Defendants, and this Court, in line with the advice of the Supreme Court, will proceed meticulously and keep their analyses separate. *See* Mem. in Support of Def.'s Mot. to Dismiss (Dec. 17, 2020); *See also* Mem. in Support of Mot. to Dismiss (Dec. 29, 2020). Further, the court must address a challenge made under Rule 12(b)(1), questioning subject matter jurisdiction, before any other challenges, since the court must find jurisdiction before determining the validity of the

claim. *See Bell v. Hood*, 327 U.S. 678, 682 (1946); *See also Jones v. Georgia,* 725 F.2d 622, 623 (11th Cir. 1984).

I.    **All Plaintiffs In The Class Lack Standing As Taxpayers.**

Plaintiffs allege in Count I of the class action complaint that "Defendants Governor Leon Guerrero and Birn have violated 10 GCA § 1903(c)(2) by spending funds they may not spend without legislative approval. Defendants Governor of Guam and Birn have expended CARES Act funds without proper appropriation and without proper authority." Class Action Compl. ¶ 106 (Oct. 6, 2020). Plaintiffs continue, alleging as to Count II, "Defendants Governor Leon Guerrero and Birn are clearly spending monies in violation of the law, and thus Plaintiffs are entitled to enjoin their illegal spending." Class Action Comp. ¶ 112 (Oct. 6, 2020). Thus, in Count I, Plaintiffs are alleging a violation of the Proper Government Spending Act; in Count II, Plaintiffs are seeking a preliminary injunction to halt the allegedly unlawful spending; and in Count IX, Plaintiffs are seeking the imposition of a constructive trust over Defendants holding of CARES Act funds. *See generally* Class Action Compl. (Oct. 6, 2020).

Plaintiffs claim they have standing pursuant to the Guam Enforcement of Proper Government Spending Act, which states, "[a]ny taxpayer who is a resident of Guam shall have standing to sue the Government of Guam . . . for the purpose of enjoining . . . the Government of Guam from expending money without proper appropriation, without proper authority, illegally, or contrary to law . . . ." 5 G.C.A. § 7103. "Taxpayer standing statutes traditionally enable 'taxpayers' to challenge governmental acts that may otherwise go unchallenged because of standing requirements." *Attorney Gen. of Guam v. Gutierrez*, 2011 Guam 10 ¶ 27. However, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *In re A.B. Won Pat International Airport Authority, Guam*, 2019 Guam 6 ¶ 19. Therefore, Plaintiffs still need to show a concrete injury in order to have standing. *See e.g. Leon-Guerrero v. Gov. of Guam*, CV1019-19, at 6 (Super. Ct. Guam Mar. 3, 2020) ("[t]he Guam Taxpayer law cannot abolish the requirement that plaintiff suffer a concrete injury").

**A. The CARES Act Fund Is A Purely Federal Appropriation**

The Guam Organic Act of Guam provides, "[a]ppropriations, except as otherwise provided in this chapter, and except such appropriations as shall be made from time to time

by the Congress of the United States, shall be made by the legislature." 48 U.S.C. § 1423j(a). Thus, in Guam, there exists two different types of appropriations: (1) local appropriations subject to approval by the Guam Legislature, and (2) direct federal appropriations subject to the terms set by the Congress of the United States. Defendants rely on the case of *Wong v. Camina* for the proposition that Congressional appropriations directly to the Government of Guam require no further action by the Guam Legislature. *See* Def.'s Mot. to Dismiss, at 4 (Dec. 29, 2020). According to *Wong*:

> "Section 1423j of Title 48, United States Code is paramount to local legislation and provides that the United States Congress can make appropriations directly to the government of Guam. Where these appropriations or grants completely fund a specific purpose without the need of local funding, and where the appropriation or grant does not provide for local legislative control, there is no authority for the Guam Legislature to assume the responsibility for reappropriating these funds."

*Wong v. Camina*, 2 Guam R. 132 (D. Guam 1978).

Defendants thus argue that the CARES Act is a federal appropriation which completely funds a specific purpose, namely, expenditures for "actions taken to respond to the public health emergency." *See* Mot. to Dismiss (Dec. 29, 2020). According to the CARES Act, the funds are subject to certain limitations and uses which are as follows: (1) necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019; (2) were not accounted for in the budget most recently approved as of the date of enactment if this section for the State or government; and (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020." CARES Act § 5001(d). Further, the oversight of the funds is dedicated to the Inspector General of the Department of the Treasury, and any funds spent in contravention of the CARES Act will be "booked as debt . . . owed to the Federal Government." *Id.* at §5001(f)(1) and (f)(2)

Plaintiffs respond by arguing that: (1) *Wong* involves a specific grant, for a specific program, at a specific agency, and is thus distinguishable from the CARES Act. The CARES Act, by contrast is very broad, allowing much deference to individual states, tribes, and territories, and is likewise not a grant; (2) the Guam Legislature enacted a spending

restriction statute years after the *Wong* decision was handed down which renders it inapplicable to the current situation; and (3) a ruling in favor of the Government would directly contradict the Guam legislature's oversight of Section 30 funds. *See* Opp'n to Def.'s Mot. to Dismiss (Jan. 25, 2021).

As to the first argument, *Wong* involves the Consumer Counsel, a local governmental entity, which applied for and was awarded a 100 percent federally funded grant in order to establish a Guam Office of Consumer Services. *See Wong v. Camina*, 2 Guam R. 132 (D. Guam 1978). The Bureau of Budget and Management Research refused to release the money claiming that Guam Law prohibited the expenditure of federal funds without an appropriation by the Guam Legislature. *Id.* The court held the grant was "for a specific purpose and fully funds that purpose without the need for local funding or local legislative control" and therefore, the Bureau of Budget and Management Research must release the funds. *Id.* Thus, Plaintiffs argue that *Wong* is distinct from the current case because the CARES Act gives a broad directive and is not a specific grant. However, nothing in *Wong* limits that decision to grants alone, in fact, it states, "the United States Congress can make appropriations directly to the Government of Guam. Where these *appropriations or grants* completely fund a specific purpose . . . there is no authority for the Guam Legislature to assume the responsibility of appropriating these funds." *Id.* (emphasis added). Thus, any nominal distinction between the status of the funds as a grant or an appropriation is immaterial.

The second and third arguments forwarded by Plaintiffs are related. The first argument centers around Guam law, 10 GCA § 19803(a), enacted in 2003, which states the Governor of Guam, "may transfer from the General Fund up to One Hundred Thousand Dollars ($100,000.00) monthly as an emergency appropriation upon the declaration of a public health emergency, and upon notification to the United States Centers for Disease Control ('CDC') to address, mitigate or abate any catastrophic disease control situations relating to the spread or outbreak of communicable disease." 10 GCA § 19803(a). Further, "the aggregate amount of all expenses incurred pursuant to this Section shall not exceed Six Hundred Thousand Dollars ($600,000.00) for any fiscal year. Any amounts in excess are subject to [the Guam Legislature's] appropriation." 10 GCA § 19803(c)(2). Thus, Plaintiffs argue that the later law should control, and the *Wong* case has been substantially reversed by 10 GCA §19803 in the current pandemic situation. Therefore, any

appropriations in excess of Six Hundred Thousand Dollars need the approval and allocation of the Guam Legislature.

Relatedly, Plaintiffs argue that the CARES Act fund is akin to the General Fund, and any decision in the favor of Defendants would necessarily alter the appropriations process of the General Fund. The General Fund is mostly derived from federal income taxes collected by the federal government and paid by military personnel and other federal employees working in Guam. *See United States v. Government*, 2013 WL 4496917 at n. 9 (D. Guam 2013). Further, according to Plaintiffs, the General Fund, like the CARES Act, is coupled with a broad purpose. *See* 48 U.S.C. § 1421h ("all . . . fees collected in Guam shall be covered into the treasury of Guam and shall be expended for the benefit and government of Guam in accordance with its annual budget"). Thus, as these funds are directed to Guam through congressional act, the General Fund acts as a recurring appropriation from the Federal Government. Therefore, any decision finding the CARES Act to be untethered from legislative oversight as a purely federal appropriation will also implicate the General Fund, which historically, has operated under legislative oversight and allocation.

The Court disagrees with these assertions. First, the CARES Act was issued with a specific directive, stating, "[t]he requirement that expenditures be incurred 'due to' the public health emergency means that expenditures must be used for actions taken to respond to the public health emergency." *See Coronavirus Relief Fund for States, Tribal Governments, and Certain Eligible Local Governments*, 86 Fed. Reg. 10, 4184 (Jan. 15, 2021). The Department of the Treasury guidance, as codified in the federal register, provides a "nonexclusive" list of twenty examples of eligible expenditures. *Id.* While there is a fair amount of discretion involved in spending the CARES Act funds, it is clear that there is a specific purpose attached to the funds. Thus, this Court is convinced that the CARES Act funds are "for a specific purpose and fully funds that purpose without the need for local funding or local legislative control." *Wong v. Camina*, 2 Guam R. 132 (D. Guam 1978). Therefore, Plaintiffs are incorrect in asserting that the Guam Legislature should have appropriation control of CARES Act funds.

Next, Plaintiffs cite 10 GCA §19803 for the proposition that the legislature enacted a law to curb the reach of *Wong* in the current disease outbreak and pandemic situation. However, the law allows the governor to "transfer from the *General Fund* up to One Hundred Thousand Dollars ($100,000.00) monthly as an emergency appropriation upon

the declaration of a public health emergency. . . ." 10 GCA §19803 (emphasis added). The General Fund, as the name connotes, is a general source of funds and the CARES Act, as discussed above, is a purely federal appropriation for a specific purpose. Thus, 10 GCA § 19803 and *Wong* are consistent with each other because 10 GCA § 19803 involves spending from the General Fund, over which the Guam Legislature has appropriation control, and *Wong*, by contrast, involves spending from a a purely federal appropriation for a specific purpose. Further, "the legislature is presumed to know the state of the law, including case law, at the time it enacts a statute." *State v. Jones*, 298 N.W.2d 296, 298 (Iowa 1980). There is no evidence that the legislature intended to limit the *Wong* decision when they passed 10 GCA § 19803. The General Fund has no specific purpose, but rather exists "for the benefit and government of Guam in accordance with its annual budget." 48 U.S.C. § 1421h. While the CARES Act does have a specific purpose, and therefore, any decision this Court renders will have no effect on the appropriation process as it relates to the General Fund.

Other courts have reached the same conclusion. A New Hampshire Court held, during a case in which state legislators brought an action against the Governor for failing to allow oversight of CARES Act funds from the state legislative branch Fiscal Committee, that the Plaintiffs lacked standing because "[t]he CARES Act funds are entirely federal, and plaintiffs have not articulated how their expenditure by [the] Governor . . . will cause any harm, direct or indirect, to any individual who pays state taxes." *Wallner v Sununu*, Docket No. 216-2020-CV-00342 (N.H. Super. Ct., Apr. 22, 2020). The Court later granted a Motion for Reconsideration on the grounds that the Plaintiffs "narrowed their focus and now argue they have standing because the Governor's actions are nullifying their statutory right to vote as members of the Fiscal Committee." *Id.* (June 5, 2020). However the Court reaffirmed that the legislative members lack standing, absent a concrete injury, as taxpayers. *Id.* The same is true on Guam. *See In re A.B. Won Pat International Airport Authority, Guam*, 2019 Guam 6 ¶ 19.

### B. Plaintiffs Have No Nexus Between Their Status As Guam Taxpayers And The Allegedly Illegal Use of Federal Funds.

In the context of taxpayer standing, there is an additional requirement that there exists a "nexus between their status [as taxpayers] and the challenged [conduct]." *Hinrichs v. Speaker of House of Representatives of Indiana General Assembly*, 506 F.3d 584, 597

(7th Cir. 2007). Further, "state taxpayers are held to the same standing requirements as federal taxpayers." *Id.* The same holds true for Guam taxpayers. *See Guam Mem'l Hosp. Auth. v. Superior Court*, 2012 Guam 17 ¶ 9 ("We have nonetheless adopted traditional standing requirements."). Moreover, "[i]n the Ninth Circuit, taxpayers have standing to file a taxpayer suit if their complaint sets forth a sufficient nexus between taxpayer, tax dollars, and the allegedly illegal government activity." *Rice v. Cayetano*, 941 F.Supp. 1529, 1538 (D. Hawaii 1996).

Here, there exists no nexus between Plaintiffs status as Guam taxpayers, and the alleged misuse of entirely Federal funds. The Plaintiffs are bringing suit as local territorial taxpayers, pursuant to the *Enforcement of Proper Government Spending Act*, while the tax dollars used in the allegedly illegal government activity are entirely federal. Thus, Plaintiffs cannot have standing to challenge the use of federal funds as Guam taxpayers. *See TABOR Foundation v. Colorado Department of Health Care Policy and Financing*, 2020 WL 6495072 *4 (finding Plaintiffs lack standing when "[t]here is no evidence in the record that individual tax payer dollars are used by the programs in any way."). *See also Hotaling* v. *Hickenlooper*, 275 P.3d 723, 727 (Colo. App. 2011) (finding no standing where Plaintiff "challenges an expenditure of federal funds – to which he has no connection as a Colorado taxpayer.").

Finally, other jurisdictions have agreed with this Court, finding "a governmental subdivision use of funds not derived from state taxpayer monies is not subject to a challenge for unlawful disbursement." *Chapman v. Bevilacqua*, 42 S.W.3d 378, 384 (Ark. 2001). *See also Matthaei v. Housing Authority of Baltimore City*, 9 A.2d 835, 838 (Md. 1939) ("[M]isuse of Federal funds would not cause injury to the complainants as state and city taxpayers, and support a suit by them."). All Plaintiffs in the class lack standing as taxpayers to challenge the Governor's use of CARES Act Funds, and therefore all claims alleging an illegal expenditure of CARES Act Funds, including Counts I, II, and IX, must be dismissed for lack of taxpayer standing.

## II.    Plaintiff Rene Balbin Lacks Constitutional Standing.

Plaintiff Rene Balbin is the only named plaintiff who works as a member of the Judicial Branch and not the Executive Branch. *See* Class Action Compl. ¶¶ 6-18. As above, the traditional standing requirements as expressed in Article III of the United States

Constitution apply to Guam's courts. *See In re A.B. Won Pat International Airport Authority, Guam,* 2019 Guam 6 ¶ 16. *See also Guam Memorial Hospital Authority v. Superior Court,* 2012 Guam 17 ¶ 9. Constitutional standing requires: (1) an injury-in-fact; (2) that the injury can be fairly traced to the challenged action by Defendant; and (3) it is likely beyond mere speculation that a favorable decision will remedy the injury sustained. *A.B. Won Pat,* at ¶ 17. An injury-in-fact needs to be both "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (internal citations omitted).

### A. Plaintiff Rene Balbin Has Failed to Allege an Injury In Fact As To Counts III, IV, VII, and VIII.

A motion for dismissal due to lack of personal jurisdiction can be "either on the face of the pleadings or by presenting extrinsic evidence for the Court's consideration." *Atesom v. Guam Memorial Hospital,* 2016 WL 5724790 (D. Guam 2016). *See also Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.* 594 F.2d 730, 733 (9th Cir. 1979) ("A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact."). A facial attack is one which "asserts that the allegations contained in a complaint are insufficient on their face to invoke . . . jurisdiction." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the court "must accept all of the factual allegations in the complaint as true." *Lacano Investments, LLC v. Balash,* 765 F.3d 1068, 1071 (9th Cir. 2014).

In contrast, a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke . . . jurisdiction." *Safe Air for Everyone,* at 1039 (9th Cir. 2004). A court resolving a factual attack on jurisdiction may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* (citing *Savage v. Glendale Union High School,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)). Further, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims," and finally, "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Federal Sav. And Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir. 1977).

Here, Defendant Baird has presented a factual attack on jurisdiction, as she is arguing against the factual basis for the allegation and not the form, or the specific elements pled. *See generally* Mem. in Support of Mot. to Dismiss (Dec. 27, 2020). Thus, the Court may consider extrinsic evidence including "matters of public record." *Atsom*, at * 4 (D. Guam 2016). Plaintiff Rene Balbin, as to Counts III and IV (as well as Counts VII, and VIII as they relate to DOA Rule 8.406(C)(2) and any due process or equal protection cause of action), relies on the allegation that the Judiciary was closed to the public. *See* Class Action Compl. ¶¶ 61-68, 77, 117, 123, 127, 191, 193. However, after reviewing the public record, it is clear to this Court that the Judiciary was never closed. Pursuant to Administrative Orders by the Supreme Court of Guam, the Judiciary was "deemed open for filing any proper paper, issuing and returning process, making a motion, and entering an order." ADM20-210 at ¶ 5 (Mar. 16, 2020). Further, a list of urgent matters "shall continue to be scheduled and heard . . . either in person or remotely by video conferencing or telephonic appearance . . . ." *Id.* ¶ 2.

The Class Action Complaint was filed on October 6, 2020, and the Judiciary, at that point, was fully open to six groups of people.[2] Thus, at most, the Judiciary was only ever partially closed to the public. Therefore, Plaintiff Balbin cannot assert an injury-in-fact to all claims that require the closure of the Judiciary as a prerequisite because there was no closure and as such, no actual injury. Plaintiff Balbin lacks standing as to Counts III and IV. However, contrary to Defendant Baird's assertions, Counts V and VI do not require the closure of the agency at issue, and thus are not implicated in the above analysis.

### B. Additionally And Alternatively, Plaintiff Balbin Has Failed To Exhaust Administrative Remedies.

Where a statute requires exhaustion of administrative remedies, a party's failure to do so deprives this Court of subject matter jurisdiction. *Carlson v. Perez*, 2007 Guam 6, ¶¶ 66, 69; *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). The exhaustion requirement "prevents piecemeal application for judicial relief and unwarranted interference by the

---

[2] (1) essential court operations which could not be resolved remotely continued at the Guam Judicial Center in Hagatna; (2) the Northern Court Satellite in Dededo was open to the public from 10 a.m. to 3 p.m., Monday to Friday; (3) the following transactions were allowed at the Guam Judicial Center by appointment only: payment of traffic citations, payment of case-related obligations (including bail, restitution, and fines and fees), and requests for traffic and court clearances; (4) non-essential matters as scheduled by the court which cannot be resolved remotely (starting on October 5, 2020); (5) certain in-person appointments with the Probation Services Division; and (6) certain in-person appointments with the Client Services and Family Counseling Division.

judiciary in the administrative process." *Horrell v. Dep 't of Admin.*, 861 P.2d 1194, 1197 (Colo. 1993). Other jurisdictions have regularly concluded that agencies "possess[] exclusive jurisdiction over State personnel matters until the available administrative remedies have been exhausted." *Glover v. State*, 860 P.2d 1169, 1172 (Wyo. 1993). *See also Janssen v. Denver Career Service Bd.*, 998 P.2d 9 (Colo. App. 1999). Further, "[a]n administrative remedy is not appropriate when the claimant challenges the validity of a statute authorizing or requiring administrative action and does not seek a particular analysis or application of a statute." *Bruns v. Municipality of Anchorage, Anchorage Water & Wastewater Utility*, 32 P.3d 362, 370 (Alaska 2001). Finally, [t]he decision to decline jurisdiction because a party failed to exhaust his administrative remedies is vested in the sound discretion of the trial court." *Glover*, at 1172 (Wyo. 1993).

However, administrative exhaustion can be avoided if deemed futile. *See Barrett-Anderson v. Camacho*, 2015 Guam 20, ¶ 32. "Ordinarily, futility refers to the inability of an administrative process to provide appropriate relief . . . and the burden of proving that any particular administrative remedy is futile rests with the litigant seeking to bypass it." *In re Doe*, 30 P.3d 878, 893 n. 20 (Haw. 2001). Moreover, "the futility exception is not available for the asking. Reliance on the exception in a given case must be anchored in demonstrable reality." *Portela-Gonzalez v. Secretary of the Navy*, 109 F.3d 74, 78 (1st Cir. 1997). Thus, "[u]nsupported and speculative claims of futility do not excuse the claimant's failure to exhaust his or her administrative remedies." *Midgett v. Washington Group Intern Long Term Disability Plan*, 561 F.3d 887, 898 (8th Cir. 2009).

Here, Plaintiffs are seeking an application of various statues and regulations including those for overtime and double pay. *See generally* Class Action Compl. (Oct. 6, 2020). Guam statutory law states: "[t]he personnel rules adopted for the Judicial Branch by the Judicial Council shall require that the Council hear all classified employee appeals." *See* 4 GCA § 4105(c)(1). The Judiciary Personnel Rule 3.30 states, "[a]ny matter covered by the Personnel Law and these rules may be appealed to the Judicial Council." Thus, Plaintiff Balbin is seeking a specific application of statutory law that requires administrative exhaustion through appeal to the Judicial Council in order for this Court to have jurisdiction over the matter.

Plaintiffs have alleged the futility of administrative exhaustion due to the closure of "various government agencies," the statements of the Governor, and the closure of the Guam

Civil Service Commission. *See* Class Action Compl. ¶¶ 91-96. However, none of these allegations affect the appeals process of the Judiciary. The Judiciary is separate and co-equal branch of Government which is not headed by the Governor, and the appeals process flows through the Judicial Council, not the Civil Service Commission. Thus, any alleged Executive Branch policy to deny administrative claims concerning this matter do not affect the Judiciary. Plaintiff attempts to counteract the separation of powers problem inherent in their assertion of futility as directed at the Judiciary of Guam, by postulating that the Judiciary would necessarily follow the statements of the Governor, and would "follow the leader" in upholding the Executive Branch's alleged stance on this issue. *See* Min. Entry at 10:08:53 AM (Apr. 28, 2021). However, the Court is not convinced. Further, the burden is on the Plaintiff to show that jurisdiction exists and the Plaintiffs have offered no evidence other than bald assertions that the Judiciary would necessarily find against the Plaintiffs position. *See Mortensen v. First Federal Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). Therefore, Plaintiff Balbin has claimed futility in a manner which is "unsupported and speculative" and as such, insufficient. *See* Midgett at 898 (8th Cir. 2009).

Plaintiff Balbin lacks standing to bring suit as to Counts III and IV because he was not injured-in-fact, and jointly or alternatively, lacks standing as to Counts III, IV, V, VI, and VII, because he failed to exhaust his administrative remedies. All claims against the Judiciary of Guam by Plaintiff Rene Balbin must be dismissed for lack of subject matter jurisdiction.

### III.     The Remaining Plaintiffs Have Constitutional Standing.

As above, Constitutional standing requires: (1) an injury-in-fact; (2) that the injury can be fairly traced to the challenged action by Defendant; and (3) it is likely beyond mere speculation that favorable decision will remedy the injury sustained. *A.B. Won Pat*, at ¶ 17. An injury-in-fact needs to be both "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations omitted).

#### A. The Remaining Plaintiffs Have Alleged An Injury-In-Fact.

Courts have routinely held that, "[t]ypically, a plaintiff's allegations of financial harm will easily satisfy these components, as financial harm is a classic and paradigmatic form of injury in fact." *Cotrell v. Alcon Laboratories*, 874 F.3d 154, 163 (3rd Cir. 2017).

*See also Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 (9th Cir. 2008). Further, any argument that Plaintiffs lack a property interest in overtime, double pay, and hazard pay is "conflat[ing] standing with the merits of the case." *Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 899 (7th Cir. 2012). As long as Plaintiffs have "a colorable claim to a property interest . . ." than injury in fact is satisfied. *Id.*

Here, Plaintiffs have alleged they are employees of the Government of Guam and their agencies were closed to the public. *See* Class Action Compl. ¶¶ 69-84. They allege that the public health emergency triggered pay requirements due to them through agency regulations and Guam law. *See Id.* ¶¶ 113-124. Finally, they allege the decision to not pay them as required has violated their equal protection and due process rights, as well as being in direct violation of Guam law. *See Id.* ¶¶ 83, 84, 113, 117, 118, 120-124, 158.

Therefore, the Plaintiffs have sufficiently alleged an injury in fact in the form of pecuniary loss due to interference into a legally protected interest. There is at least a colorable claim that Plaintiffs have a property interest in the money allegedly due to them. The injury is fairly traced to the decision by Defendants to not pay Plaintiffs, and a favorable decision will mend the injury by Plaintiffs receiving the monies allegedly due to them. Thus, the remaining Plaintiffs have satisfied the Constitutional standing test as outlined by the Guam Supreme Court as to Counts III, IV, V, VI, VII, and VIII.

**B. Sovereign Immunity Has Been Waived Because Administrative Exhaustion Was Futile.**

"Sovereign immunity implicates a court's subject matter jurisdiction." *Sumitomo Constr. Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 22. In order for a lawsuit to be maintained against the Government of Guam, "sovereign immunity must be expressly waived by duly enacted legislation." *Bautista v. Agustin*, 2015 Guam 23 ¶ 18. *See also Gange v.Gov't of Guam*, 2017 Guam 2 ¶ 34 ("Waivers of sovereign immunity must be unequivocally expressed and are strictly construed."). The Guam Legislature via the Government Claims Act has specifically waived sovereign immunity for tort claims and actions that are contractual in nature. *See* 5 GCA §6101 et seq. "For employees of the Government of Guam . . . [there exists] two different methods for overcoming sovereign immunity. First employees protected under the merit system can seek judicial review of a final adverse action. Second, employees under contract may pursue potential remedies through the

Government Claims Act." *Ehlert v. University of Guam*, 2019 Guam 27 ¶ 11 (internal citations omitted). The Guam Supreme Court has held, "without proper administrative exhaustion, the Legislature has not waived sovereign immunity." *DFS Guam L.P. v. A.B. Won Pat International Airport*, 2020 Guam 20 ¶ 60.

As above, "[u]nder the futility exception, exhaustion is not required where administrative remedies sought would be futile." *Barrett-Anderson v. Camacho*, 2015 Guam 20 ¶¶ 32-34. Defendants present a facial attack on the claims of futility and as such, "the court may not simply assume the allegations supporting standing lack merit and dismiss the case." *Barefoot v. Jennings*, 456 P.3d 447, 450 (Cal. 2020). The Guam Supreme Court in *Barrett-Anderson*, found that administrative exhaustion was futile when the DRT did not answer any letters sent by the Attorney General and continued issuing electronic gaming licenses. *See Barret-Anderson*, 2015 Guam 20 ¶ 33. It therefore, was DRT's position that the "issuance of electronic gaming licenses was lawful," and any attempt to "challenge the regulations' validity at the agency level would have been futile." *Id.* at ¶ 34.

Plaintiffs have alleged, "Governor Leon Guerrero and Director Edward Birn of the Department of Administration have declared, without reason, that double pay is not applicable to the Emergency." *See* Class Action Compl. ¶ 91. They further allege, "the Attorney General of Guam has also declared that double pay is not applicable to Plaintiffs . . . ." *Id.* ¶ 92. Finally, they allege "various Government Agencies that would hear such grievances have been closed," including the Guam Civil Service Commission. *Id.* ¶ 93, 95. Thus, as in *Barrett-Anderson*, the Governor of Guam and the Attorney General both have espoused a position that the regulations did not apply to Plaintiffs and therefore this Court finds that administrative exhaustion would have been futile and sovereign immunity was thereby waived. The remaining Plaintiffs have Constitutional standing as to Counts III, IV, V, VI, VII, and VIII.

### IV. Counts III, IV, V, VI, VII, and VIII Are Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.

The Guam Rules of Civil Procedure provide, "[a] pleading which sets forth a claim for relief . . . . shall contain . . . . a short and plain statement of the claim showing that the pleader is entitled to relief." GRCP Rule 8(a). The Supreme Court first interpreted Federal Rule of Civil Procedure 8(a)(2), on which Guam Rule of Civil Procedure 8(a) is based, to

mean that a valid complaint need only provide, "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957). The Court further clarified, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.

However, fifty years later, the Supreme Court announced a new heightened pleading standard. The Court held, there is a "need at the pleading stage for allegations plausibly suggesting that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quoting FRCP Rule 8(a)). Therefore, "[w]hile a complaint attacked by a . . . . motion to dismiss does not need detailed factual allegation, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Id.* at 555 (citations omitted). The plausibility standard required that plaintiff needed to allege plausible facts connected to his claim for relief. Thus, a plaintiff needs to facially allege sufficient facts to "nudge[] their claims across the line from conceivable to probable." *Id.* at 570. This standard was extended to federal civil cases. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

The Supreme Court of Guam rejected applying the plausibility standard to local civil pleadings. See *Ukau v. Wang*, 2016 Guam 26 ¶ 32 ("Based on the plain language of Rule 8(a) and this court's historical interpretation as imposing only a liberal, notice pleading requirement, we find that the Twombly standard is inapplicable to local civil pleadings.").Further, the "trial court must construe the pleading in the light most favorable to the non-moving party and resolve all doubts in the non-moving party's favor." *Id.* at ¶ 51 (citing *First Hawaiian Bank v.* Manley, 2007 Guam 2 ¶ 9). Therefore, in Guam, "the trial court should []consider each and every claim . . . employing the Conley 'no set of facts' language." *Lujan v. J.L.H Trust*, 2016 Guam 24 ¶ 15.

### A. Due Process Claim.

Count III of the Complaint alleges a violation of the Due Process Clause and the Guam Organic Act. *See* Compl. ¶¶ 113-124. "[S]ubstantive due process . . . guarantees that a state cannot deprive a person of a protected interest for certain reasons." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). In order to succeed in a Substantive Due Process claim, a Plaintiff must show a constitutionally protected interest in property. *Gerhart v. Lake Co., Montana*, 637 F.3d 1013, 1019 (9th Cir. 2011). In order to constitute a property

interest, a person must have a "legitimate claim of entitlement" to the benefit, as opposed to an abstract desire or unilateral expectation. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Further, "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Moreover, "a property interest can be created expressly or may arise through implication from a state agency's words, actions, rules, or mutually explicit understandings." *Turnquist v. Elliot*, 706 F.2d 809, 811 (7th Cir. 1983).

Further, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 457 U.S. 511, 526 (1985). Accordingly, there is "importance [in] resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). However, qualified immunity does not apply to ". . . § 1983 cases against individuals where injunctive relief is sought instead of or in addition to damages." *Pearson*, at 242 (2009) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).

Finally, "[l]ike territories, states are not 'persons' for purposes of Section 1983." *Guam Soc. Of Obstetricians and Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-65 (1989)). Therefore, "[i]n addition, state officers, when sued for damages in their official capacities, are likewise not "persons" within the meaning of 1983." *Id.* The policy behind this doctrine is clear, a state officer must not be a person and instead a function of the state itself, when "a judgment against a state official in his or her official capacity runs against the state and its treasury." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

First, Plaintiffs cannot have a "legitimate claim of entitlement" to an allegedly regulatory created property interest when they have failed to plead all the necessary elements of that regulation. *See Infra* at § IV (C) – (E). Further, Defendants, in their personal capacity are protected from suit through qualified immunity, as to any claims for monetary damages,

as the status of double pay and overtime pay as a constitutional right is unclear. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). Qualified immunity does not apply to prospective injunctive relief. *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). Finally, the Court cannot sustain an action for monetary damages against officials acting in their official capacity because they are not "persons" as required under 42 U.S.C. § 1983 in this matter, because any judgment in the favor of the Plaintiffs would necessarily be paid out of the Guam treasury.

Therefore, the Due Process claim must be dismissed for failure to state a claim because: (1) Plaintiffs failed to allege a "legitimate claim of entitlement" to a property interest in double pay and overtime pay; (2) any monetary claims against officials in their personal capacity are blocked through qualified immunity; and (3) any monetary claims against officials in their official capacities are blocked because the officials are not "persons" as required by 42 U.S.C. § 1983.

### B. Equal Protection Claim

An equal protection claim may be established by Plaintiff alleging that: he is a member of a suspect class or "(1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment." *See, Vill. of Willowbrook v. Otech*, 528 U.S. 562, 564 (2000). "A plaintiff must allege facts, not simply conclusions, which show that an individual was personally involved in the deprivation of his civil rights." *Laguana v. Ishizaki*, 2006 WL 156955 (D. Guam). Further, "a suspect class is one 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.'" *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976) (quoting *San Antonio School District v. Rodriguez*, 411 U.S. 1, 16 (1973)).

Here Plaintiffs have simply pled, "the change [in] due process of law in application of the emergency pay regulations have not been applied uniformly to all workers of the Government of Guam, and no rational basis exists for the difference in application." Compl. ¶ 122. Plaintiffs continue, "[t]his has resulted in some agencies receiving double pay while others are refused double pay based on that agency not being 'closed.'" Compl. ¶ 123. Plaintiffs have not alleged they are a member of a suspect class; therefore, they must be a

member of an identifiable class and faced intentional differential treatment with no rational basis in order to sustain an equal protection claim. However, Plaintiffs have also failed to allege that they are a member of an identifiable class, rather they merely state conclusory allegations that an equal protection violation exists. Therefore, even construing the pleading in the light most favorable to the non-movant, Plaintiff can prove no set of facts that would entitle him to relief, and the Equal Protection Claim must be dismissed for failure to state a claim. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) ("[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory").

## C. Violation of Double Pay For Emergency Conditions

In Count IV, Plaintiffs have alleged a violation of DOA Rule 8.406(c) which states: "[w]hen the Governor declares a State of Emergency, the appointing authority shall determine whether affected facilities or portions thereof, which are located in the area covered by the Executive Order or proclamation, are to be closed." DOA Rule 8.406(c). The regulation continues: "Those employees, required to remain on duty to provide essential services, shall be paid at double the regular rate, or granted compensatory leave credits for the hours worked during the period the facility is closed. . . ." DOA Rule 8.406(c)(2).

The plain language of the regulation provides that in order for the double pay provisions to be triggered: (1) the agency must be closed, (2) other employees must be on paid excused leave, and (3) there must be hazardous or unsafe working conditions. *See* DOA Rule 8.406. Other Superior Court of Guam case law has found, "Rule 8.406 is intended to provide additional compensation to essential employees who are forced to work during a period when similarly situated workers are on excused leave status, thereby rectifying any disparate treatment among employees." *Topsana v. Government of Guam*, SP0064-20, at 10 (Super. Ct. Guam Jun. 4, 2020). Thus, in order for the double pay provision to be triggered, other employees must have been on excused leave.

Plaintiff has failed to allege that other employees were on excused leave status. They simply allege that Plaintiffs were "essential and remained on duty at the instruction of [the agency]." *See* Class Action Compl. ¶¶ 130-171. Therefore, while the violation of the *Double Pay for Emergency Conditions* regulation is a cognizable legal theory, it requires that other employees be on paid excused leave, and Plaintiffs have not alleged sufficient facts to support that legal theory. *See Balistreri*, 901 F.2d 696, 699 (9th Cir. 1988). As such, Plaintiffs

can prove no set of facts that would grant them relief, and Count IV must be dismissed for failure to state a claim.

### D. Violation of Overtime Laws

Finally, Plaintiffs have alleged a violation of the Minimum Wage and Hour Act which states:

> No employer shall employ any employee in excess of forty (40) hours a week, unless such employee receives compensation for employment in excess of such weekly hours, at a rate not less than one and one-half (1-1/2) times the regular rate at which he is employed, except that the provisions of this Subsection shall not apply to employees covered under Section 207(k) of the Fair Labor Standards Act, Chapter 8 of Title 29 of the United States Code.

22 GCA § 3107(a).

The above allegation works in conjunction with DOA Rule 7.404 which requires that "all employees, whether classified or unclassified, are entitled to overtime pay for all such hours worked during an emergency situation declared by the governor of Guam." Compl. ¶ 181. Thus, Plaintiffs has alleged a violation of both the *Minimum Wage and Hour Act*, and DOA Rule 7.404 concerning the overtime laws applying to a State of Emergency as declared by the Governor of Guam. *See* Class Action Compl. ¶¶ 172-188.

However, the Supreme Court of Guam has noted the exceptions to the rule governing overtime compensation, stating:

> While section 3107(a) sets forth a general prohibition, forbidding an employer from requiring employees to work more than forty hours without paying overtime, section 3108 then specifically exempts eight classes of employees. *See* 22 GCA § 3108 (2005). In section 3108, the Legislature provides that the maximum hour requirements of the previous section "shall not apply with respect to" those employed by parent, spouse or child (section 3108(a)); administrators, executives and professionals (section 3108(b)); . . . .

*Guerrero, et. al., v. Thomas et. al.*, 2010 Guam 11 ¶¶ 16-17.

CV0733-20, Layla Story-Bernardo, et al v. Government of Guam, et al.
Decision and Order (Motion to Dismiss).

Page **21** of **25**

The exception also applies to teachers. *See* 22 GCA § 3108(b)(5). The category of "professionals" includes nurses. *See Fazekas v. Cleveland Clinic Foundation Health Care Ventures, Inc.*, 204 F.3d 673, 676 (6th Cir. 2000). The statute also specifically exempts employees covered under the Fair Labor Standards Act which specifically deals with "[e]mployment by public agenc[ies] engaged in fire protection or law enforcement." *See* 29 U.S.C. § 207(k). The class of Plaintiffs includes teachers, nurses, and law enforcement officers. *See generally* Class Action Compl. (Oct. 6, 2020). Therefore, either Plaintiffs are exempted from Guam Overtime Laws, or alternatively, have not sufficiently pled their non-exempt status. As such, Plaintiffs have failed to plead a sufficient factual basis to obtain relief under the cognizant legal theory presented in the *Minimum Wage and Hour Act*. Count V must be dismissed for failure to state a claim.

Finally, Defendants argue that DOA Rule 7.404 "require[s] prior approval before overtime is required," and absent approval, "any overtime hours alleged 'are not considered hours worked.'" Def.'s Mot. to Dismiss (Dec. 29, 2020). The regulation states, "overtime work may be authorized by the appointing authority," and "no person shall be required to work overtime unless the employee has received certification by the appointing authority that funds for overtime are available." *See* DOA Rule 7.402(A); *See also* DOA Rule 7.404(E). The plain language of the rule does not require a certification by the appointing authority for overtime to commence, rather it states, "no person shall be required to work overtime," absent a certification. *See* DOA Rule 7.404(E). Thus, the rule is instituted for the protection of government employees to ensure that money exists to pay them overtime as they accrue it. It would be contrary to the policy of the rule to require a certification in order for Plaintiffs to proceed in this case. However, the rule does require that "overtime may be authorized by the appointing authority in the case of emergency" *See* DOA Rule 7.402(A). Plaintiffs have not sufficiently pled that overtime was authorized by the appointing authority as required by the DOA Rules. Plaintiffs offer no facts, nor any statements, that the overtime allegedly worked was authorized, and thus subject to the time and a half pay rule. Therefore, Count VI must be dismissed for failure to state a claim.

### E. Estoppel Claim

Estoppel claims against the Government are not categorically barred however Courts have consistently held that "estoppel should be used sparingly against the public entities."

*Harding County, S.D. v. Firthiof*, 575 F.3d 767, 777 (8th Cir. 2009). Thus, in addition to the traditional elements, "estoppel against the government must rest upon affirmative misconduct going beyond mere negligence." *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985) (citing *Simon v. California*, 593 F.2d 121, 123 (9th Cir. 1979)). Further, "estoppel will apply only where the government's wrongful act will cause a serious injustice and the public's interest will not suffer undue damage by imposition of the liability." *Id.* Affirmative misconduct requires an "affirmative misrepresentation or affirmative concealment of a material fact by the government that goes beyond mere negligence." *U.S. v. Bell*, 602 F.3d 1074, 1082 (9th Cir. 2010).

Here, Plaintiffs have alleged that "the Defendants knew that the Plaintiffs would work, and would expect to work under the pay conditions for similar emergency conditions as they had in the past . . . [and] [t]he Plaintiffs allege that that the Defendants intended for the Plaintiffs to continue to work under such an understanding." Opp'n to Def.'s Mot. to Dismiss at 14 (Jan 25. 2021). Thus, Plaintiffs have not alleged an "affirmative misrepresentation or affirmative concealment" but rather have alleged an implicit agreement to work for double pay. These facts are insufficient to support a claim for estoppel against the Government, and therefore, Count VIII must be dismissed for failure to state a claim upon which relief can be granted.

## V. Leave To Amend Complaint

The Guam Rules of Civil Procedure provide, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." GRCP 15(a). The Guam Supreme Court also instructs that when considering whether to allow an amendment, a court should review whether there has been "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." *Arashi & Co. v. Nakashima Enter.*, 2005 Guam 21 ¶ 16.

Guam Rules of Civil Procedure, Rule 15(a) was derived from Federal Rule of Civil Procedure 15(a), and thus interpretations of the federal rule are persuasive in interpreting the Guam rule. *See M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp*, 2016 Guam 35 ¶ 40; *See also* GRCP 15(a), source note. The freedom to amend a pleading "is to be applied with

extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Further, a lengthy delay is "not alone enough to support denial, [but] is nevertheless relevant," and the fact that "new claims set forth in the amended complaint would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense . . . is not fatal to amendment." *Id*. Finally, the "determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Further, the fact that Plaintiffs "did not present [their] request to amend [their] complaint in a separate formal motion is not a bar." *Balistreri v. Pacifica Police Dept.* 901 F.2d 696, 701 (9th Cir. 1988). A request for leave to amend a complaint should be considered even if it "was not contained in a properly captioned motion." *Id. See also Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445 n. 2 (9th Cir.1990) ("request for leave to amend should have been granted even though request appeared in opposition to motion for summary judgment and was not formally tendered"). Moreover, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Breier v. Northern Cal. Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963).

However, leave to amend is inappropriate where a court lacks jurisdiction. Jurisdictional limits deprive a court of the power to act. *See Dangle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985); *Wood v. Guam Power Auth.*, 2000 Guam 18 at ¶ 3, *Newby v. Gov't of Guam*, 2010 Guam 41¶ 31. "[O]n the other hand, [if] a plaintiff's complaint fails to state a claim, he may request an opportunity to amend and it will be liberally granted." *Dangle*, at 1348 (5th Cir. 1985). Finally, if the complaint is dismissed for lack of jurisdiction, it is dismissed "without prejudice to the plaintiff's claims, and the rejected suitor may reassert his claim in any competent court." *Id*.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is **GRANTED** without prejudice and leave to amend. It is hereby **ORDERED** that Counts I, II, and IX are dismissed for lack of jurisdiction without prejudice, all Counts against Defendant Baird in her personal and official capacity are dismissed for lack of jurisdiction without prejudice,

and Counts III, IV, V, VI, VII, and VIII are dismissed for failure to state a claim with leave to amend.

**SO ORDERED** this **27th** day of **May, 2021**.

_____
The Honorable Teresa Kim-Tenorio
Judge, *Pro Tempore,*
Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:

J. WALSH, AG, A. Limtiaco
A. Quenga, D. Mesa Lujan

Date: _____ Time: 5/27/21

_____
Deputy Clerk, Superior Court of Guam

CV0733-20, Layla Story-Bernardo, et al v. Government of Guam, et al.
Decision and Order (Motion to Dismiss).

Page **25** of **25**